**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| BEATRICE NIQUETTE, Derivatively on Behalf of Nominal Defendant CUTERA, INC., <br><br>        Plaintiff, <br><br>   v. <br><br>TAYLOR C. HARRIS, JANET D. WIDMANN, JULIANE T. PARK, SHEILA A. HOPKINS, KEVIN J. CAMERON, NICHOLAS S. LEWIN, KEITH J. SULLIVAN, GREGORY A. BARRETT, TIMOTHY O'SHEA, JOSEPH WHITTERS, DAVID H. MOWRY, ROHAN SETH, and J. DANIEL PLANTS, <br><br>        Defendants, <br><br>  and <br><br>CUTERA, INC., <br><br>        Nominal Defendant. | Case No. _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Beatrice Niquette ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Cutera, Inc. ("Cutera" or the "Company"), against certain current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon*, inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Cutera, legal filings, news reports, securities analysts' reports about the Company, the securities class action *In re Cutera, Inc. Securities Litigation.,* Case No. 4:23-cv-02560-JST (N.D. Cal.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by Plaintiff on behalf of Cutera against certain of its officers and current and former members of the Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least February 17, 2021, and May 9, 2023 (the "Relevant Period"), and violations of federal securities laws, as set forth below.

2.     Cutera designs, develops, and manufactures aesthetic medical devices used for a variety of laser and energy-based beauty treatments.

---

[1] The Individual Defendants are Taylor C. Harris, Janet D. Widmann, Juliane T. Park, Sheila A. Hopkins, Kevin J. Cameron, Nicholas S. Lewin, Keith J. Sullivan, Gregory A. Barrett, Timothy O'Shea, Joseph Whitters, David H. Mowry, Rohan Seth, and J. Daniel Plants, who are sometimes referred to herein by their last name. "Defendants" means Cutera and the Individual Defendants.

3.     Throughout Relevant Period, the Individual Defendants made and allowed others to make false and misleading statements and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants (1) overstated the sustainability of Cutera's revenue growth in the wake of the COVID-19 pandemic, (2) failed to disclose certain conflicts among members of the Company's senior leadership and Board, and (3) failed to disclose several material weaknesses in the Company's internal control over financial reporting.

4.     While the public began to learn the truth in January 2023, when the Company reported its failure to meet its revenue guidance for 2022, the full truth would not be revealed until May 9, 2023, when Cutera reported disappointing financial results for the first quarter 2023 and announced Defendant Seth had resigned as the Company's Chief Financial Officer ("CFO").

5.     On this news, the price of Cutera common stock declined $6.06 per share over two trading sessions, or 30%, from a close of $20.20 per share on May 9, 2023, to close at $14.14 per share on May 11, 2023.

6.     As a result of the foregoing, the Securities Class Action was filed against the Company as well as Mowry, Seth, and Plants, exposing Cutera to massive class-wide liability.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)) and Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9) promulgated thereunder by the SEC and Sections 10(b) and 21D of the Exchange Act (15 U.S.C. §§ 78j(b), 78u-4(f)).

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

*Plaintiff*

12.     Plaintiff is, and has been at all relevant times, a shareholder of Cutera.

*Nominal Defendant*

13.     Nominal Defendant Cutera is incorporated under the laws of Delaware with its principal executive offices located in Brisbane, California.

*The Individual Defendants*

14.     Taylor C. Harris has served as a member of the Board since 2023 when he was also appointed as President and CEO.

15.     Janet D. Widmann was appointed to be Chairperson of the Board in April 2023 contemporaneously with the termination of Plants as Executive Chairman. Widmann resigned from the Board on October 3, 2023, effective November 1, 2023. Widmann was a member of the Governance and Corporate Responsibility Committee and the Compensation Committee.

16.     Juliane T. Park has served as a member of the Board since 2021. Park is a member

of the Governance and Corporate Responsibility Committee and the Audit Committee.

17.     Sheila A. Hopkins has served as a member of the Board since May 2021. Hopkins previously served on the Audit Committee and Compensation Committee before being appointed as Interim CEO on April 11, 2023.  Hopkins continued to serve on the Board after she was succeeded by Harris as CEO in August 2023.

18.     Kevin J. Cameron has served as a member of the Board since May 2023.

19.     Nicholas S. Lewin has served as a member of the Board since May 2023.

20.     Keith J. Sullivan has served as a member of the Board since May 2023.

21.     Gregory A. Barrett served as a member of the Board from 2011 to 2023 when he did not stand for reelection.  Barrett served as a member of the Compensation Committee.

22.     Timothy O'Shea served as a member of the Board from 2004 to 2023 when he did not stand for reelection. O'Shea served as a member of the Governance and Corporate Responsibility Committee and the Audit Committee.

23.     Joseph Whitters served as a member of the Board from 2019 until his resignation in May 2023.

24.     David H. Mowry served as the Company's CEO at all relevant times until his termination on April 11, 2023 and as a director until his resignation from the Board on May 11, 2023. Mowry is named as a defendant in the Securities Class Action.

25.     Rohan Seth served as the Company's CFO from August 2020 to May 2023.  Seth is named as a defendant in the Securities Class Action.

26.     J. Daniel Plants was appointed Chairperson of the Board in October 2016 and was a member of the Board from January 2015 to June 2023. Plants served as Executive Chairman from May 2021 through April 2023. Plants ceased to serve as the Company's Executive Chairman

as of April 11, 2023 and resigned as a member of the Board on June 9, 2023. Plants is named as a defendant in the Securities Class Action.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

27.     By reason of their positions as officers and/or directors of Cutera, and because of their ability to control the business and corporate affairs of Cutera, the Individual Defendants owed Cutera and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Cutera in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Cutera and its shareholders so as to benefit all shareholders equally.

28.     Each director and officer of the Company owes to Cutera and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

29.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Cutera, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

30.     To discharge their duties, the officers and directors of Cutera were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

31.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.   The

conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Cutera, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

32.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the Nasdaq, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

33.     To discharge their duties, the officers and directors of Cutera were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Cutera were required to, among other things:

> (a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Cutera's own Code of Business Conduct & Ethics (the "Code of Conduct");

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how Cutera conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Cutera and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Cutera's operations would comply with all applicable laws and Cutera's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

34.    Each of the Individual Defendants further owed to Cutera and the shareholders the duty of loyalty requiring that each favor Cutera's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

35.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Cutera and were at all times acting within the course and scope of such agency.

36.    Because of their advisory, executive, managerial, and directorial positions with Cutera, each of the Individual Defendants had access to adverse, non-public information about the Company.

37.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Cutera.

## **CUTERA'S CODE OF BUSINESS CONDUCT AND ETHICS**

38.    Cutera's Code of Conduct explicitly applies "to all employees and members of the Board of Directors of Cutera."

39.    The Code of Conduct states that it is "designed to deter wrongdoing and promote" *inter alia* "[f]ull, fair, accurate, timely, and understandable disclosure in reports and documents we file with regulatory agencies and in our other public communications" and "[c]ompliance with applicable laws, rules, and regulations."

40.     The Code of Conduct states that, "The Board or its designated committee will be responsible for investigating violations and determining appropriate disciplinary action for matters involving members of the Board or executive officers. The Board or its designated committee may designate others to conduct or manage investigations on its behalf and recommend disciplinary action." Further, the Code of Conduct states:

> Subject to the general authority of the Board to administer this Code, the VP, General Counsel and Compliance officer and Chief Financial Officer will be jointly responsible for investigating violations and determining appropriate corrective action… The Board reserves the right to investigate violations and determine appropriate disciplinary action on its own or to designate others to do so in place of, or in addition to, the VP, General Counsel and Compliance officer and Chief Financial Officer.

> The Company will promptly investigate any suspected violations. If it is determined that evidence of a violation exists, the individual subject to investigation will be notified.

41.     The Code of Conduct states that "Acting in 'good faith' means that you provide all of the information you have and believe you are giving a sincere and complete report. Individuals who take action against a person for making a report or participating in an investigation in good faith will be subject to disciplinary action, up to and including termination, as local law permits."

## CUTERA'S AUDIT COMMITTEE CHARTER

42.     Pursuant to Cutera's Audit Committee Charter, the Audit Committee is responsible for:

> 1) Overseeing the accounting and financial reporting processes of the Company and audits of the financial statements of the Company;

> 2) Assisting the Board in oversight and monitoring of: a) the integrity of the Company's financial statements; b) the Company's financial reporting process; c) the Company's compliance with legal and regulatory requirements under applicable securities law; d) the Accounting Firm's qualifications, independence and performance; and e) the Company's systems of internal accounting and financial controls;

3) Preparing a report in the Company's annual proxy statement in accordance with the rules of the Securities and Exchange Commission (the "SEC");

4) Providing the Board with the results of its monitoring and recommendations derived therefrom;

5) Providing to the Board such additional information and materials as it may deem necessary to make the Board aware of significant financial matters that come to its attention and that require the attention of the Board;

6) Overseeing compliance with the "whistleblower policy" and control investigations of any reports made thereunder; and

7) Overseeing management's responsibility for quality and safety of the Company's products and the Company's compliance with applicable global clinical and regulatory requirements.

43.     Additionally, Audit Committee Charter states the responsibilities of the committee shall also include:

Reviewing on a continuing basis the adequacy and effectiveness of the Company's system of internal controls (including any material weaknesses, significant deficiencies and significant changes in internal controls reported to the Audit Committee), including meeting periodically with Management, the internal employees or independent consulting firm responsible for the Company's internal auditing (the "Internal Auditors"), and the Accounting Firm, to review the adequacy of such controls and to review, before its release, the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the Accounting Firm relating to such disclosure;

***

Reviewing (before release) the unaudited quarterly operating results in the Company's quarterly earnings release;

Reviewing the interim financial statements and disclosures under Management's Discussion and Analysis of Financial Condition and Results of Operations with Management and the Accounting Firm prior to the filing of the Company's Quarterly Reports on Form 10-Q. Also, the Committee shall discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the independent registered public accounting firm under generally accepted auditing standards;

Reviewing with Management and the Accounting Firm the financial statements and disclosures under Management's Discussion and Analysis of Financial Condition and Results of Operations to be included in the Company's Annual Report on Form 10-K (or the annual report to

shareholders if distributed prior to the filing of Form 10-K). Also, the Committee shall discuss the results of the annual audit and any other matters required to be communicated to the Committee by the Accounting Firm under generally accepted auditing standards;

Discussing quarterly with the Accounting Firm the critical policies and practices of the Company, and any alternative treatments of financial information within generally accepted accounting principles that have been discussed with Management, together with the Accounting Firm's judgments about the quality and appropriateness of the Company's accounting principles as applied in its financial reporting;

Discussing with Management and internal audit representatives (internal employees or independent external firm of consultants) the activities, organizational structure and qualifications of the Company's internal audit function;

Reviewing any reports by Management or the Internal Auditors regarding the effectiveness of, or any deficiencies in, the design or operation of internal controls and any fraud, whether or not material, that involves Management or other employees who have a significant role in the Company's internal controls and reviewing before release the disclosure regarding the Company's system of internal controls required under SEC rules and rules of the PCAOB to be contained in the Company's periodic filings and the attestations or reports by the Accounting Firm relating to such disclosure;

Overseeing compliance with the requirements of the SEC for disclosure of Accounting Firm's services and Audit Committee members, member qualifications and activities;

Conducting a post-audit review of the financial statements and audit findings, including any significant suggestions for improvements provided to Management by the Accounting Firm;

Overseeing management's responsibility for quality and safety of the Company's products and the Company's compliance with applicable global clinical and regulatory requirements.

Oversight of Regulatory Compliance:

Overseeing management's responsibilities for regulatory compliance and risk management in the area of product quality and patient safety, including the periodic review of; a) The effectiveness of the risk management program b) Important quality issues including those related to compliance with FDA quality systems, regulations, and any issue resulting in regulatory reporting (i.e. medical device reports, corrections, removals & recalls, and inspections by government authorities) c) Important clinical safety updates and/or new safety information. d) Remedial measures designed to address regulatory

11

compliance quality assurance and patient safety matters. e) Periodically
evaluate and assess the organizational structure and current human resources
of the company to fulfill the regulatory duties of the company

                                        ***

Reviewing, approving and monitoring the Company's code of ethics for its
senior financial officers;

Reviewing, in conjunction with counsel, any legal matters that could have a
significant impact on the Company's financial statements;

Providing oversight and review (at least annually) of the Company's risk
management policies, including its investment policies;

Reviewing and approving in advance any proposed related party transactions,
including, without limitation, approving all transactions required to be
disclosed pursuant to SEC Regulation S-K, Item 404;

If necessary, instituting special investigations with full access to all books,
records, facilities and personnel of the Company;

## SUBSTANTIVE ALLEGATIONS

44.     Cutera designs, develops, and manufactures aesthetic medical devices used for a

variety of laser and energy-based beauty treatments.

45.     Throughout Relevant Period, the Individual Defendants issued false and

misleading statements failed to disclose material adverse facts about the Company's business and

operations. Specifically, Defendants (1) overstated the sustainability of Cutera's revenue growth,

(2) failed to disclose certain conflicts among members of the Company's senior leadership and

Board, and (3) failed to disclose several material weaknesses in the Company's internal control

over financial reporting.

46.     The Relevant Period begins on February 17, 2021, when the Company announced

its financial results for the fourth quarter 2020 and full-year 2020.  In the Company's associated

press release, Defendant Mowry highlighted that the Company's "commitment to execution" had

driven "steady improvement during the second half of 2020, posting solid results despite the

difficult [COVID-related] operating environment." Defendant Mowry further assured investors that the Company would "enter 2021 well-positioned to accelerate growth and expand profitability as the impact of COVID-19 continues to wane."

47.     On March 23, 2021, the Company filed its 2020 annual report on Form 10-K (the "2020 Annual Report") with the SEC which was signed by Defendants Mowry, Seth, and Plants. The 2020 Annual Report noted that, as of December 31, 2020, there were no material changes to the Company's internal controls "that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." Defendants Mowry and Seth certified that they had reviewed the 2020 Annual Report, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the Company's supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles [("GAAP")]."

48.     On April 30, 2021, Cutera filed its 2021 proxy statement with the SEC (the "2021 Proxy Statement") wherein Defendants solicited shareholder votes in favor of numerous proposals, including the re-election of Defendants Mowry, Plants, Barrett, and O'Shea as well as a non-binding approval of executive compensation.

49.     The 2021 Proxy Statement states, "the Board has adopted a Corporate Code of Business Conduct and Ethics" that is "designed to deter wrongdoing…including…full, fair, accurate, timely and understandable disclosure in reports and documents that we file with, or

submit to, the SEC and in other public communications made by us; compliance with applicable governmental laws, rules and regulations…" *Id.* at 17.

50.     The 2021 Proxy Statement states "our Audit Committee assists the Board in its risk oversight function by reviewing and discussing with management our system of disclosure controls and our internal controls over financial reporting risks associated with our cash investment policies, risks related to regulatory matters, and evaluating and advising on other matters." *Id.* at 12.  It states further that:

> The Enterprise Risk Committee, created in 2018, assists the Board in supervising the enterprise risk management activities of the Company and its subsidiaries, and advises the Board with respect to the enterprise risk management framework of the Company. The Enterprise Risk Committee further assists the Board in its oversight of the Company's management of key risks, including strategic and operational risks, as well as the guidelines, policies and processes for monitoring and mitigating such risks.

51.     The 2021 Proxy Statement, however, omitted to disclose that the Company was beset with compliance problems that posed significant risks of harm, and that the Board lacked a system to oversee mission-critical compliance risks related to *inter alia* the accuracy of its public statements.  The 2021 Proxy Statement also was false and misleading because it failed to disclose the following: (1) contrary to the 2021 Proxy Statement's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements and violate federal law, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Defendants on the Board at that time who were breaching their fiduciary duties were improperly interested in increasing their unjust compensation.

52.     The false and misleading elements of the 2021 Proxy Statement were material to

stockholders in voting on the Board's proposals, particularly with respect to stockholders' consideration of the reelection of directors and the approval of executive compensation.

53.     Throughout the Relevant Period, Defendants continued to tout the Company's purportedly sustainable revenue growth and to assert that the Company had implemented internal controls over financial reporting that provided assurance of reliable financial reporting and compliance with GAAP principles. For example, on May 5, 2021, during the Company's quarterly earnings call with investors, in response to a question from a Stephens analyst about the Company's ability to provide strong, sustainable year-over-year growth, Defendant Seth expressed a positive outlook, stating that "we feel really good about the sustainability of the results that we're delivering and we'll deliver for the rest of this year."

54.     On May 10, 2021, Cutera filed its first quarter 2021 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants noted that "the Company's disclosure controls and procedures were effective at March 31, 2021," and that, other than additional controls related to newly-issued convertible notes, "there were no changes in the Company's internal control over financial reporting during the three months ended March 31, 2021 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." Defendants Mowry and Seth certified that they had reviewed the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under [the Company's] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation

of financial statements for external purposes in accordance with [GAAP]."

55.     On August 6, 2021, Cutera filed its second quarter 2021 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants noted that "the Company's disclosure controls and procedures were effective at June 30, 2021," and that, other than additional controls related to newly-issued convertible notes, "there were no changes in the Company's internal control over financial reporting during the six months ended June 30, 2021 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." Defendants Mowry and Seth certified that they had reviewed the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under [the Company's] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."

56.     On November 3, 2021, Cutera announced its third quarter 2021 financial results. During the Company's quarterly earnings call with investors held that same day, Defendant Seth emphasized that Cutera "continue[d] to lay a strong foundation for sustainable growth over the next several years."

57.     On November 4, 2021, Cutera filed its third quarter 2021 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants noted that "the Company's disclosure controls and procedures were effective at September 30, 2021," and that, other than additional controls related to newly-issued convertible notes, "there were no changes in the

Company's internal control over financial reporting during the nine months ended September 30, 2021 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." Defendants Mowry and Seth certified that they had reviewed the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under [the Company's] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."

58.     On February 22, 2022, the Company announced its financial results for the fourth quarter and full-year 2021. In connection with this announcement, Defendant Mowry explained that the Company's performance "was driven by our team's outstanding commercial execution and supported by robust underlying patient demand" as "North American Capital business eclipsed Pre-Covid levels and delivered 56% growth in the quarter." According to Mowry, the Company "anticipate[s] that this top-line momentum will continue as we move through the year, driven by our growing capital equipment pipeline and the strong ongoing patient demand," and that, "[i]n light of our business strength, in combination with future product launches, we are tremendously excited for the year ahead."  To this end, Cutera provided 2022 revenue guidance of between $255 million and $260 million.

59.     On March 1, 2022, the Company filed its 2021 annual report on Form 10-K with the SEC (the "2021 Annual Report"), which was signed by Defendants Mowry, Seth, and Plants. In the 2021 Annual Report, the Company noted "a material weakness in the Company's internal

control over financial reporting. This material weakness is related to ineffective information technology general controls . . . the areas of user access and segregation of duties related to certain information technology ('IT') systems that support the Company's financial reporting process at its Japan subsidiary," but reassured investors that the Company was "designing and implementing effective internal control measures to improve its internal controls over financial reporting and remediate this material weakness" and that "this material weakness did not result in any material misstatement of the Company's consolidated financial statements for the periods presented." Defendants Mowry and Seth certified that they had reviewed the 2021 Annual Report, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the Company's supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."

60.    On May 2, 2022, Cutera filed its annual proxy statement with the SEC (the "2022 Proxy Statement") wherein Defendants solicited shareholder votes in favor of numerous proposals, including the re-election of Defendants Mowry, Plants, Barrett, O'Shea, Hopkins, Park, and Widmann as well as a non-binding approval of executive compensation.

61.    The 2022 Proxy Statement states, "the Board has adopted a Corporate Code of Business Conduct and Ethics" that is "designed to deter wrongdoing…including…full, fair, accurate, timely and understandable disclosure in reports and documents that we file with, or submit to, the SEC and in other public communications made by us; compliance with applicable

governmental laws, rules and regulations…" *Id.* at 17.

62.     The 2022 Proxy Statement states "our Audit Committee assists the Board in its risk oversight function by reviewing and discussing with management our system of disclosure controls and our internal controls over financial reporting risks associated with our cash investment policies, risks related to regulatory matters, and evaluating and advising on other matters." *Id.* at 12.  The 2022 Proxy Statement states further that:

> The Enterprise Risk Committee, assists the Board in supervising the enterprise risk management activities of the Company and its subsidiaries, and advises the Board with respect to the enterprise risk management framework of the Company. The Enterprise Risk Committee further assists the Board in its oversight of the Company's management of key risks, including strategic and operational risks, as well as the guidelines, policies and processes for monitoring and mitigating such risks.

63.     The 2022 Proxy Statement, however, omitted to disclose that the Company was beset with compliance problems that posed significant risks of harm, and that the Board lacked a system to oversee mission-critical compliance risks related to *inter alia* the accuracy of its public statements.  The 2022 Proxy Statement also was false and misleading because it failed to disclose the following: (1) contrary to the 2022 Proxy Statement's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements and violate federal law, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Defendants on the Board at that time who were breaching their fiduciary duties were improperly interested in increasing their unjust compensation.

64.     The false and misleading elements of the 2022 Proxy Statement were material to stockholders in voting on the Board's proposals, particularly with respect to stockholders'

consideration of the reelection of directors and the approval of executive compensation.

65.     On May 10, 2022, the Company issued a press release announcing its financial results for the first quarter of 2022, including a 17% year-over-year increase in revenue that was "driven by robust performance across the business, with particular strength in North America." Defendant Mowry further highlighted that "the momentum we built in the second half of 2021 carried into the new year." The Company also reiterated its 2022 revenue guidance of between $255 million and $260 million.

66.     During the Company's quarterly earnings call with investors held that same day, Defendant Mowry touted the Company's "continued momentum" and "solid execution" that contributed to overall revenue growth of 17% over the prior year. Defendant Seth assured investors that, "[g]iven our strong balance sheet, we are well positioned to continue supporting the growth of our core business."

67.     That same day, Cutera filed its first quarter 2022 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants reiterated that the Company's "[m]anagement identified a material weakness in the year ended December 31, 2021, over the Company's internal control over financial reporting," noting that "[t]his material weakness is related to ineffective information technology general controls," but again reassured investors that "the Company's management, including the CEO and CFO, has concluded that the consolidated financial statements, included in the 2021 Annual Report on Form 10-K, and in the Form 10-Q for the three months ended March 31, 2022, fairly present, in all material respects, the Company's financial condition." Defendants Mowry and Seth certified that they had reviewed the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements

were made, not misleading with respect to the period covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under [the Company's] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."

68.     On August 4, 2022, the Company announced its financial results for the second quarter of 2022 and reiterated its previously-issued 2022 revenue guidance in the range of $255 million to $260 million.  In connection with this announcement, Defendant Mowry touted that he is "excited by the momentum we continue to see in our core business, as prior investments in our sales force drove strong results in capital and consumables product segments in North America, Europe, and Australia/New Zealand in particular" and that the "team is further encouraged by the resiliency and strength of underlying demand trends in the marketplace."

69.     On August 8, 2022, Cutera filed its second quarter 2022 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants again noted the previously identified material weakness pertaining to IT controls, and reiterated that "the Company's management, including the CEO and CFO, has concluded that the consolidated financial statements, included in the 2021 Annual Report on Form 10-K, and in the Form 10-Q for the three and six months ended June 30, 2022, fairly present, in all material respects, the Company's financial condition." Defendants Mowry and Seth certified that they had reviewed the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period  covered by this report," and that they had "[d]esigned such internal control over financial reporting, or caused such internal control over

financial reporting to be designed under [the Company's] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with [GAAP]."

70.     On November 3, 2022, the Company announced its financial results for the third quarter of 2022 and revealed that the Company now expected to finish the year "at the upper end of revenue guidance of $255 million to $260 million." Defendant Mowry explained that he was "pleased by the momentum we continue to see in our core business, as prior investments in sales force expansion deliver strong results in both our capital and consumables product segments across North America and other direct-sales markets" and that "[b]ased upon our current view, the strength of our third quarter performance, and our capital equipment pipeline, we remain encouraged by the resilience of our core markets[.]"

71.     During the Company's quarterly earnings call with investors that same day, Defendant Mowry also highlighted that "underlying treatment and procedure volumes were steady and that the customer demand for capital remains strong," asserting that these factors would "enable[e] a strong core business performance for Cutera with noteworthy year-over-year growth rates in both our capital equipment sales as well as our consumable product sales." Additionally, Defendant Seth confirmed that the Company would "be at the upper end of our revenue guidance despite absorbing the entirety of unprecedented foreign exchange rate declines in Japan, Europe, Britain and Australia."

72.     On November 9, 2022, Cutera filed its third quarter 2022 Form 10-Q with the SEC, which was signed by Defendant Seth. In the Form 10-Q, Defendants again noted the previously identified material weakness pertaining to IT controls, and reassured investors that "the Company's management, including the CEO and CFO, has concluded that the consolidated

financial statements, included in the 2021 Annual Report on Form 10-K, and in the Form 10-Q

for the three and nine months ended September 30, 2022, fairly present, in all material respects,

the Company's financial condition." Defendants Mowry and Seth certified that they had reviewed

the Form 10-Q, that it "does not contain any untrue statement of a material fact or omit to state a

material fact necessary to make the statements made, in light of the circumstances under which

such statements were made, not misleading with respect to the period covered by this report," and

that they had "[d]esigned such internal control over financial reporting, or caused such internal

control over financial reporting to be designed under [the Company's] supervision, to provide

reasonable assurance regarding the reliability of financial reporting and the preparation of

financial statements for external purposes in accordance with [GAAP]."

73.    The above statements identified above were materially false and misleading, and

failed to disclose material adverse facts about the Company's business and operations.

Specifically, Defendants overstated the sustainability of Cutera's revenue growth, failed to

disclose certain conflicts among members of the Company's senior leadership and Board, and

failed to disclose several material weaknesses in the Company's internal control over financial

reporting.

74.    Investors began to learn the truth about the Company's performance and growth

prospects on January 9, 2023, when the Company announced its preliminary financial results for

full-year 2022. Despite assuring investors just two months earlier that the Company would finish

the year "at the upper end of revenue guidance of $255 million to $260 million," Defendants

revealed that the Company now expected revenue between $252 million and $253 million.

75.    On this news, the price of Cutera common stock declined $9.41 per share, or more

than 23%, from a close of $40.45 per share on January 6, 2023, to close at $31.04 per share on

January 9, 2023.

76.     Then, after the market closed on February 28, 2023, Cutera filed a Notification of Late Filing with the SEC, reporting that the Company would not be able to timely file its annual financial report on Form 10-K by the March 1, 2023 deadline because "[a]dditional time is required to complete the Form 10-K, including the financial statements that will be filed as part of the Form 10-K and management's assessment of the Company's internal control over financial reporting." The Company further disclosed that it "ha[d] identified and expect[ed] to disclose in the Form 10-K material weaknesses in its internal control over financial reporting related to . . . ineffective inventory count controls."

77.     On this news, the price of Cutera common stock declined $0.32 per share, or approximately 1%, from a close of $32.43 per share on February 28, 2023, to close at $32.11 per share on March 1, 2023.

78.     Then, on March 16, 2023, the Company filed a second Notification of Late Filing with the SEC, explaining that it would not meet the extended deadline to file its 2022 Annual Report. In this filing, Defendants noted that "[t]he Company ha[d] identified and expect[ed] to disclose in the Form 10-K material weaknesses in its internal control over financial reporting related to . . . ineffective inventory count controls and stock-based compensation."

79.     On this news, the price of Cutera common stock declined $3.49 per share, or approximately 12.5%, from a close of $27.85 per share on March 16, 2023, to close at $24.36 per share on March 17, 2023.

80.     On March 24, 2023, the Company filed a Form 8-K regarding a "Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing" with the SEC, disclosing that that Cutera had received "a notice . . . from the Listing Qualifications

Department of [Nasdaq] on March 21, 2023 indicating that the Company is not currently in compliance with Nasdaq's Listing Rules . . . due to the Company's inability to timely file its Form 10-K for the year ended December 31, 2022 . . . with the [SEC]." The Form 8-K further stated that the Nasdaq required the Company to submit a plan to regain compliance on or before May 22, 2023.

81.     On this news, the price of Cutera common stock declined $0.92 per share, or approximately 3.4%, from a close of $27.07 per share on March 24, 2023, to close at $26.15 per share on March 27, 2023.

82.     On April 7, 2023, the Company filed a Current Report on Form 8-K with the SEC disclosing that, on April 3, 2023, Defendant Plants made a demand of a special meeting of the stockholders to remove five directors (Barrett, Hopkins, O'Shea, Park, and Widmann) from the Board.

83.     Also on April 7, 2023, the Company filed its 2022 annual report on Form 10-K with the SEC (the "2022 Annual Report"), which was signed by Defendants Mowry, Seth, and Plants. In the 2022 Annual Report, the Company stated "that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as a result of the material weaknesses disclosed below." The material weaknesses further described in the 2022 Annual Report included:

- Information technology general controls ("ITGCs") including, segregation of duties, user access, and reports produced by certain IT systems that support the Company's financial reporting process including those related to the implementation of an ERP system;

- Inventory controls related to the completeness, existence, and cut-off of inventories

held at third parties, inventories held by sales personnel, and inventories in transit, and controls related to the calculation of adjustments to inventory for items considered excessive and obsolete; and

- The completeness and accuracy of expense for routine and non-routine equity- based awards.

84.     On April 10, 2023, Defendants Plants and Mowry jointly issued a press release in support of their demands calling for the Board to remove five of its directors at a special meeting of the Company's stockholders. In connection with their demands, Defendants Plants and Mowry cited concerns that the Board had not made progress on a succession plan for the role CEO, and Mowry stated that "the approach the Entrenched Directors have taken to these matters has been detrimental to the business and served no purpose other than to position certain Directors closer to the CEO title that they seem to covet for themselves." Furthermore, Mowry noted that "the Board has reached such a level of dysfunction that critical decisions are not being made and vital initiatives are unable to move forward."

85.     On April 11, 2023, Defendant Seth and senior members of Cutera management issued a letter to the Board endorsing the current trajectory of the Company under Defendants Plants and Mowry. In the letter, the signatories claimed that Plants and Mowry are "visibly and completely committed to the Company, its people and its customers." The letter also indicated that the signatories believe that Cutera's path is "the right one," stating that "the new business model is driving a true transformation of Cutera."

86.     On April 12, 2023, the Company announced that, on April 11, 2023, the Board had terminated Plants as Cutera's Executive Chairman and Chairman of the Board "with cause" and Defendant Mowry as Cutera's CEO "with cause." The Company also disclosed that the Board

had simultaneously appointed Hopkins to serve as the Interim CEO and Widmann, as Independent Chair of the Board, effective immediately. The Company explained that the terminations of Defendants Plants and Mowry came "following joint and unanimous recommendations from a special committee comprising all members of the Board's Governance and Corporate Responsibility Committee and the majority of the members of the Board of Directors."

87.     The Company further revealed that Plants "strongly recommended" the termination of Defendant Mowry beginning in November 2022, explaining: In November 2022, the Board's independent directors began exploring a CEO transition. Mr. Plants strongly recommended the immediate termination of Mr. Mowry and indicated that he wanted to succeed him as the Company's next CEO.

88.     This followed a previous attempt by Mr. Plants to gain the CEO role in February 2021 by recommending removing Mr. Mowry. After serious consideration, the Board instead decided to seek an external CEO candidate with the assistance of an executive search firm. Following that decision, in an apparent campaign to seize control of the Company, Mowry and Plants issued a press release in which they disclosed – and blatantly mischaracterized in a defamatory manner – highly confidential internal deliberations of the Board in direct violation of their employment agreements and their fiduciary duties as directors and officers under Delaware law.  In connection with these announcements, the Company announced that "it is withdrawing its full-year 2023 outlook."

89.     On this news, the price of Cutera common stock declined $7.63 per share, or more than 28%, from a close of $27.07 per share on April 11, 2023 to close at $19.44 per share on April 12, 2023.

90.     On May 9, 2023, the Company reported disappointing financial results for the first

quarter 2023 that were "below expectations due to execution challenges in the business" and announced that Defendant Seth had resigned as the Company's Chief Financial Officer on May 3, 2023, but would remain with the Company in an advisory capacity until May 26, 2023.

91.     On this news, the price of Cutera common stock declined $6.06 per share over two trading sessions, or 30%, from a close of $20.20 per share on May 9, 2023, to close at $14.14 per share on May 11, 2023.

92.     As a direct and proximate result of the Individual Defendants' misconduct outlined herein, the Company has lost and expended, and will continue to lose and expend, millions of dollars.

93.     These costs include, *inter alia*: (i) legal fees in connection with the Securities Class Action, including attorneys', accountants', experts', and investigators' fees; (ii) costs to implement measures to remedy the material weaknesses in Cutera's internal controls over financial reporting; and (iii) substantial compensation and benefits paid to the Individual Defendants, who breached their fiduciary duties to the Company.

94.     As a direct and proximate result of the Individual Defendants' misconduct and breach of fiduciary duties, the Company has also suffered and will continue to suffer a loss of reputation and goodwill, and a liar's discount regarding Cutera's stock in the future.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

95.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

96.     Cutera is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

97.     Plaintiff is a current shareholder of Cutera and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation. At the time this action was commenced, the six-member Board was comprised of Defendants Hopkins, Park, Harris, Cameron, Lewin, and Sullivan (collectively, the "Director Defendants"). Accordingly, Plaintiff is only required to show that three members of the current Board (the "Demand Board") cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

98.     The Company's definitive proxy statement, filed with the SEC on June 21, 2023, concedes Hopkins is not an independent director. *See* page 14.  Similarly, Harris, as Cutera's CEO, is not independent.  Accordingly, Plaintiff need only show demand is futile as to one of the other four members of the Demand Board (namely Park, Cameron, Lewin, and Sullivan).

99.     Each of the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

100.    The Individual Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the Company to violate the law, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the

Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

101.   The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

102.   As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Cutera, the Director Defendants knew, or should have known, the material facts surrounding Cutera's compliance with campaign finance and securities laws, and the accuracy of its public statements.

103.   The Enterprise Risk Committee is and was responsible for, *inter alia*, overseeing enterprise risk management and material compliance risks.  Director Defendant Park, as a member of the Enterprise Risk Committee breached her fiduciary duties by declining to act in the face of repeated red flags that the Company was deficient in meeting its compliance and reporting obligations. Defendant Park cannot independently consider any demand to sue herself for breaching their fiduciary duties to the Company, as that would expose her to substantial liability and threaten her livelihood.

104.   Defendant Park also served the Board that appointed Harris as CEO.

105.   On April 10, 2023, Defendants Plants and Mowry jointly issued a press release in support of their demands calling for the Board to remove five of its directors at a special meeting of the Company's stockholders. In connection with their demands, Defendants Plants and Mowry

cited concerns that the Board had not made progress on a succession plan for the role CEO, and Mowry stated that "the approach the *Entrenched Directors* have taken to these matters has been detrimental to the business and served no purpose other than to position certain Directors closer to the CEO title that they seem to covet for themselves." Furthermore, Mowry noted that "the Board has reached such a level of *dysfunction* that *critical decisions* are not being made and vital initiatives are unable to move forward." This entrenched Board included Director Defendants Park and Hopkins.

106.     Demand in this case is excused because each of the directors derive hundreds of thousands of dollars annually from the Company, control the Company, and are indebted to each other. These and other conflicts of interest have precluded the current directors from calling into question the Director Defendants' conduct or taking any remedial actions to redress the conduct alleged herein. Accordingly, the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action due to their close relationship with, and indebtedness to, the Director Defendants named herein.

107.     All of the Director Defendants are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to Cutera's of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly allowed the Company to violate the law. All of the Director Defendants violated the Code of Conduct, including by refusing to take action to address the misconduct alleged herein. As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

108.     None of the Director Defendants have taken any remedial action to investigate or

redress the Company's losses and exposure due to their and the other Individual Defendants' misconduct.

109.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Cutera. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Cutera, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

110.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Cutera to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

111.    Accordingly, a pre-suit demand on the current Board comprised of the Director Defendants is futile and excused.

## COUNT I

**Against the Individual Defendants for Violations of § Section 14(a) of the Exchange Act
(15 U.S.C. § 78n(a)(1)) and Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9)**

112.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

114.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

115.    Under the direction and watch of the Defendants, The 2021 Proxy Statement and the 2022 Proxy Statement (the "Proxy Statements") failed to disclose, *inter alia*: (1) contrary to the Proxy's descriptions of the Board's risk oversight function and the Risk and Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Defendants on the Board at that time who were breaching their fiduciary duties were improperly interested in

increasing their unjust compensation.

116.    The Proxy Statements further failed to disclose that the Company was violating federal law, issuing false and misleading statements in violation of securities laws, and had failed to establish or maintain adequate internal controls. As a result, the Proxy Statements were materially false and misleading.

117.    In the exercise of reasonable care, these defendants should have known that the statements contained in the Proxy Statements were materially false and misleading.

118.    The misrepresentations and omissions in the Proxy Statements were material to Company stockholders in voting on the Proxy Statements. The misrepresentations and omissions were material to Company stockholders in voting on the matters set forth for stockholder determination in the Proxy, including but not limited to the reelection of certain Defendants and the approval, on an advisory basis, of the compensation of the Company's executives.  The Proxy Statements were essential links in defendants' insulation of the awards from stockholder challenge.

119.    The false and misleading elements of the 2022 Proxy Statement led to, among other things, the election of Hopkins, Park, and Widmann, which allowed them to continue to breach their fiduciary duties to Cutera.

120.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the Proxy Statements.

121.    No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## <u>COUNT II</u>

**Against Defendants Mowry, Seth, and Plant for Contribution Under §10(b) and 21D of the Exchange Act**

122.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

123.    The conduct of Mowry, Seth, and Plant, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

124.    Cutera, Mowry, Seth, and Plant are named as defendants in the related Securities Class Action that alleges and asserts claims arising under the federal securities laws. Cutera is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

125.    If Cutera is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Mowry, Seth, and Plant as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

126.    As officers and directors, Mowry, Seth, and Plant had the power or ability to, and did, control or influence, either directly or indirectly, Cutera's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

127.    The Individual Defendants are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

128.    Mowry, Seth, and Plant have damaged the Company and are liable to the Company for contribution.

129.    As such, Cutera is entitled to receive all appropriate contribution or indemnification from Mowry, Seth, and Plant.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty

130.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.   The Individual Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

132.   The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

133.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

134.   Specifically, throughout Relevant Period, the Individual Defendants issued false and misleading statements failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants (1) overstated the sustainability of Cutera's revenue growth, (2) failed to disclose certain conflicts among members of the Company's senior leadership and Board, and (3) failed to disclose several material weaknesses in the Company's internal control over financial reporting.

135.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

136.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.  As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT IV

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

137.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

138.     By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

139.     Plaintiff on behalf of Cutera has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants for Unjust Enrichment

140.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

141.     By their wrongful acts, violations of law, and false and misleading statements and

omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Cutera.

142.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Cutera that were tied to the performance or artificially inflated valuation of Cutera, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

143.    Plaintiff, as a shareholder and a representative of Cutera, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

144.    Plaintiff on behalf of Cutera has no adequate remedy at law.

## COUNT VI

### Against the Individual Defendants for Abuse of Control

145.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

146.    The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

147.    As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

148.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VII

### Against the Individual Defendants for Gross Mismanagement

149.    Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

150.    The Individual Defendants, either directly or through aiding and abetting, failed to reasonably exercise their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the expectations and operations of a publicly held corporation.

151.    As a direct and proximate result of the Individual Defendants' gross mismanagement alleged herein, the Company has sustained and will continue to sustain substantial damages.

152.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VIII

### Against the Individual Defendants for Waste of Corporate Assets

153.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

154.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

155.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

156.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

157.    Plaintiff on behalf Cutera has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.      Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.      Awarding punitive damages;

D.      Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 30, 2023

**RIGRODSKY LAW, P.A.**

By: */s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com
*Counsel for Plaintiff*

Of Counsel:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Erica L. Stone
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: estone@rosenlegal.com